## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## (DALLAS DIVISION)

| | |
|---|---|
| AURELIUS CAPITAL MASTER, LTD., and ACP MASTER, LTD. | Civil Action No. |
| Plaintiffs, | ECF CASE |
| v. | VERIFIED CREDITOR DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY |
| ARCILIA C. ACOSTA, FREDERICK M. GOLTZ, PAUL KEGLEVIC, SCOTT LEBOVITZ, MICHAEL MACDOUGALL, JONATHAN D. SMIDT, and JOHN F. YOUNG | |
| Individual Defendants, | |
| and | |
| ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY, a Texas Corporation | |
| Nominal Defendant. | |

Plaintiffs Aurelius Capital Master, Ltd. and ACP Master, Ltd., allege as follows:

### NATURE OF THE ACTION

1.      In 2007, Energy Future Holdings Corporation ("EFH") (then operating as TXU Corporation), a major electric energy supplier to the State of Texas, was taken private in a $43 billion leveraged buyout ("LBO"). It was the largest LBO in United States history. The deal was financed, in part, through a $24.5 billion credit agreement ("the Credit Agreement") between an EFH subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH"), and several hundred lenders, with Nominal Defendant Energy Future Competitive Holdings Company ("EFCH") serving as guarantor. The deal was a spectacular failure; by October 2008,

electric energy prices had collapsed, and EFH and its subsidiaries were hemorrhaging cash.  By 2010, TCEH and EFCH were insolvent.  Their insolvency continues to this day.

2.      Beginning within weeks of when the Credit Agreement was executed in October 2007, and continuing through January 2013, TCEH made hundreds of unduly generous demand loans for billions of dollars to EFH ("the Upstream Loans").  The Upstream Loans can be illustrated as follows:



3.      The vast majority of the Upstream Loans were made after energy markets collapsed in mid-2008, precisely when investors were devaluing EFH bonds to reflect the company's weak financial profile, untenable capital structure, questionable long-term business plan, and material operating headwinds.  Yet the terms of TCEH's loans to EFH reflected none of this.  The loans did not reflect a fair transaction between the companies:  No unaffiliated third party would have extended such loans to EFH, nor would TCEH ever have extended such loans to an unaffiliated third party of like credit quality.

4.      The Upstream Loans were made when both TCEH and EFCH were insolvent, a fact belatedly acknowledged in 10-Ks for fiscal year 2010.  Having failed to receive reasonably equivalent value for the loans made, TCEH was left without assets sufficient to make payments to its creditors.

2

5.      The Upstream Loans from TCEH to EFH were classic fraudulent transfers: They were made for less than reasonably equivalent value and they left the transferor (TCEH) and guarantor (EFCH) insolvent.

6.      The Upstream Loans were also a continuing fraud. TCEH had the power to recall the full amount outstanding on the Upstream Loans any time. But for over five years, it did not. And by choosing not to do so—in the face of both its insolvency and its failure to secure reasonably equivalent value in exchange for the loans—TCEH, in essence, engaged in a new fraudulent transfer each and every day.

7.      After repeated complaints by concerned creditors, in January 2013, EFH completed repayment of the Upstream Loans to TCEH with all interest purportedly due thereon. The interest paid however, was more than $725 million *less* than what EFH would have paid had the Upstream Loans been made for reasonably equivalent value ("the Unpaid Interest"). TCEH has never demanded repayment of the Unpaid Interest from EFH—continuing the fraudulent transfer from one to the other.

8.      EFCH is the sole member of TCEH. Through its Board of Directors—the individual Defendants here—EFCH had the power to cause TCEH to demand a market-interest rate from EFH. But the Board of EFH chose not to act because it sat on both sides of the Upstream Loans, as officers or directors of *every* entity involved in them: the transferor (TCEH), the guarantor (EFCH), and the transferee (EFH). By failing to act, the directors of EFCH breached their fiduciary duties—duties which, by virtue of EFCH's insolvency, flow to its creditors, including Plaintiffs.

3

9.     This is a derivative action to collect from the current and former directors of EFCH the Unpaid Interest on the Upstream Loans that they failed to cause TCEH to collect from EFH.

## PARTIES

10.     Plaintiff Aurelius Capital Master, Ltd. ("ACM") is an exempted company with limited liability incorporated in the Cayman Islands.  ACM is the owner of both secured debt issued as a term loan under the Credit Agreement and bonds issued by TCEH and guaranteed by EFCH.  ACM became a creditor in January 2011, before the accrual of much of the Unpaid Interest complained of and before most of the Upstream Loans at issue were either made or re-extended.

11.     Plaintiff ACP Master, Ltd. ("ACP") is an exempted company with limited liability incorporated in the Cayman Islands.  ACP is the owner of both secured debt issued as a term loan under the Credit Agreement and bonds issued by TCEH and guaranteed by EFCH.  ACP became a creditor in January 2011, before the accrual of much of the Unpaid Interest complained of and before most of the Upstream Loans at issue were either made or re-extended.

12.     Nominal Defendant Energy Future Competitive Holdings Company ("EFCH") is a Texas corporation with its principal place of business in Texas.  EFCH is a wholly-owned subsidiary of EFH.  EFCH is also the parent, and sole member, of TCEH.  EFCH was previously known as US Holdings.

13.     Defendant Arcilia C. Acosta is a Director of EFCH (April 2012 to present), as well as TCEH (April 2012 to present) and EFH (May 2008 to present).  On information and belief she is a citizen of the State of Texas.

4

14.     Defendant Frederick M. Goltz was a Director of EFCH (October 2007 to May 2012), as well as TCEH (October 2007 to May 2012) and EFH (October 2007 to May 2012). Until February 2013, he was a member of KKR & Co. L.P. ("KKR"), which is a controlling shareholder of EFH pursuant to the Limited Partnership Agreement of Texas Energy Future Holdings Limited Partnership ("the Texas Holdings Partnership"). On information and belief he is a citizen of the State of California.

15.     Defendant Paul Keglevic is a Director of EFCH (July 2010 to present), as well as TCEH (July 2010 to present). He also is the Chief Financial Officer of EFH, a position he has held since June 2008. On information and belief he is a citizen of the State of Texas.

16.     Defendant Scott Lebovitz is a Director of EFCH (October 2007 to present), as well as TCEH (October 2007 to present) and EFH (October 2007 to present). He is a Managing Director of Goldman, Sachs & Co. ("Goldman Sachs"), which, through its affiliate GS Capital Partners, is a controlling shareholder of EFH pursuant to the Texas Holdings Partnership. On information and belief he is a citizen of the State of New York.

17.     Defendant Michael MacDougall is a Director of EFCH (October 2007 to present), as well as TCEH (October 2007 to present) and EFH (October 2007 to present). He is a partner of TPG Capital, L.P. ("TPG"), which is a controlling shareholder of EFH pursuant to the Texas Holdings Partnership. On information and belief he is a citizen of the State of Texas.

18.     Defendant Jonathan D. Smidt is a Director of EFCH (June 2012 to present), as well as TCEH (June 2012 to present) and EFH (October 2007 to present). He is a member of KKR, which is a controlling shareholder of EFH pursuant to the Texas Holdings Partnership. On information and belief he is a citizen of the State of New York.

19.     Defendant John F. Young is a Director of EFCH (July 2010 to present), as well as TCEH (July 2010 to present) and EFH (January 2008 to present). He also is the Chief Executive Officer of EFH, a position he has held since January 2008. On information and belief he is a citizen of the State of Texas.

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this is an action brought by subjects of the Cayman Islands against citizens of the States of California, Texas and New York for an amount exceeding $75,000.

21.     The Court has personal jurisdiction over Nominal Defendant EFCH because it is incorporated in Texas.

22.     The Court has personal jurisdiction over Defendants Acosta, Goltz, Keglevic, Lebovitz, MacDougall, Smidt, and Young because, as current or former officers of a Texas corporation, they have conducted business in the state—business out of which the claim here arises—which is sufficient to bring them within the reach of the Texas long-arm statute.

23.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(d).

## BACKGROUND

I.      **TCEH FRAUDULENTLY TRANSFERRED BILLIONS OF DOLLARS TO EFH**

24.     On October 10, 2007, TCEH entered into the Credit Agreement with several hundred lenders. TCEH's immediate corporate parent, Nominal Defendant EFCH, was designated the primary guarantor. The Credit Agreement entitled TCEH to borrow up to $24.5 billion, the bulk of which (nearly $16 billion) was provided through a term loan due in 2014.

25.     On October 10, 2007, the same day that the Credit Agreement was executed, TCEH entered into two promissory notes with EFH under which the former agreed to terms for lending funds to the latter.  One note provided that TCEH would lends funds to help EFH cover its general operating expenses ("the SG&A Note"); the other provided that TCEH would lend funds to help EFH cover its principal and interest payments on certain external debt ("the First P&I Note").  On November 6, 2008, the First P&I Note was voided.  It was replaced, on May 1, 2009, by a second note with terms identical to the first, except that it included an additional term stating that, among other things, EFCH would serve as a guarantor on the note ("the Second P&I Note").  In April 2011, the SG&A Note was amended to include a similar guarantee by EFCH. All three notes provided that (1) any loans made were payable-on-demand to TCEH and (2) interest on any loans made would bear interest at a rate of LIBOR + 5.00%.  The notes are attached here as Exhibits A-C.

26.     Between November 2007 and January 2013, TCEH made hundreds of loans to EFH; those made between November 2007 and December 2010 are reflected in Exhibits A-C. At its peak, in the fourth quarter of 2010, over $1.9 billion was outstanding on these loans.  On a quarterly basis, upon information and belief, the average amount outstanding was over $1 billion.

27.     The vast majority of loans made by TCEH to EFH under the various notes—and particularly those loans made from the second quarter of 2008 to January 2013, including all loans made under the Second P&I Note—were not made for reasonably equivalent value.  This is obvious when the terms of those loans are compared to the yields that unaffiliated third-parties received on comparable EFH debt during the same period of time.  All else being equal, from 2008 to the present, the market has demanded and received yields two to four times higher than what TCEH was paid for the Upstream Loans.

28.     To wit, from the first quarter of 2008 to the first quarter of 2013, the interest paid on the Upstream Loans (LIBOR + 5.00%) ranged from a high of approximately 8.40% (in the first quarter of 2008) to a low of approximately 5.20% (in the first quarter of 2013).   On a quarterly basis, the average interest rate paid on the Upstream Loans was approximately 5.74%. In contrast, over the same period of time, comparable debt issued by EFH on the open market yielded no less than 9.53% (in the second quarter of 2008) and as much as 22.39% (in the third quarter of 2010).   Beginning in the fourth quarter of 2008, the spread between what TCEH was being paid on the Upstream Loans and what it *should have been paid* had the Defendants here demanded what third-parties were receiving was as high as 17.10% (in the third quarter of 2010).

29.     Over time, the difference between the interest payments that TCEH received under the terms of the notes and what it would have received had the Defendants here ensured that TCEH received a market rate of interest compounds to over $725 million (and counting).

30.     Upstream Loans were also made while TCEH was insolvent, a fact that EFH now openly acknowledges.   On February 18, 2011, EFH filed its 10-K for fiscal year 2010, which is attached as Exhibit D.   In it, EFH revealed that its own "[r]ecent valuation analyses of TCEH's business indicate that the principal amount of its outstanding debt currently exceeds its enterprise value."   Exhibit D at 23.   On information and belief, TCEH became insolvent around the second quarter of 2008, and all subsequent loans to EFH were made while TCEH was insolvent.   As described more fully below, TCEH remains insolvent to this day.

31.     Accordingly, because TCEH did not receive reasonably equivalent value for the Upstream Loans and because those loans were made and re-extended while TCEH was insolvent, the Upstream Loans were fraudulent transfers.

32.    Because EFCH's only significant asset is its membership in TCEH, it was rendered insolvent concurrently with TCEH.  As described more fully below, it too remains insolvent to this day.

## II.    THE BOARD OF EFCH HAS FAILED TO ACT, IN BREACH OF THEIR FIDUCIARY DUTIES

33.    Beginning no later than March 2011, all of the Defendants were aware that the Upstream Loans were being made, and that TCEH was not receiving reasonably equivalent value for those loans.  All were also aware that both TCEH and EFCH were insolvent, and that they therefore owed fiduciary duties to creditors that were being harmed by the Upstream Loans.  And yet the Defendants did nothing, in plain breach of those duties.

34.    EFH's 10-K for fiscal year 2010 disclosed the Upstream Loans, noting that "[a]s of December 31, 2010 and 2009, EFH Corp. demand notes payable to TCEH totaled $1.921 billion and $1.406 billion, respectively."  See Exhibit D at 164.  As alleged in Paragraph 30, the same 10-K also acknowledged that TCEH was insolvent.  See Exhibit D at 23.  EFCH's 10-K for fiscal year 2010, attached as Exhibit E, showed that EFCH was insolvent, as well.  See Exhibit E at 95 (reporting EFCH's book equity as negative $6.24 billion).

35.    In the wake of those disclosures, a number of creditors wrote to the Boards of TCEH and EFCH in late 2011 and early 2012 with concerns that the Upstream Loans were fraudulent transfers that were unfair to TCEH, EFCH, and their creditors.  See Exhibits F-K. The creditors also noted that the Board of EFCH had a fiduciary duty to direct TCEH to recall those loans and collect all interest due, including the Unpaid Interest.

36.    All of the Defendants personally and publicly acknowledged their receipt of these letters.  EFH's 10-K for fiscal year 2011, which is attached as Exhibit L, notes that:

> Lenders or holders of our debt have in the past alleged, and might allege in the future, . . .
> that our or our subsidiaries' boards of directors or similar bodies or officers are not

properly discharging their fiduciary duties. . . . These claims have included as recently as the first quarter of 2012, and may include in the future, among other things, claims that certain loans from TCEH to EFH Corp. were fraudulent transfers and should be repaid to TCEH [and that] authorization of these loans violates the fiduciary duties of EFCH's and TCEH's boards of directors . . . .

Exhibit L at 31. All of the Defendants signed this public filing. See Exhibit L at 253-254.

37. EFH's 10-K for fiscal year 2011 disclosed that the Upstream Loans "totaled $1.592 billion . . . as of December 31, 2011." See Exhibit L at 180. It also acknowledged that TCEH remained insolvent: "[T]hird party analyses of TCEH's business . . . have indicated that the principal amount of TCEH's outstanding debt exceeds its enterprise value . . . ." See Exhibit L at 30. EFCH had also remained insolvent throughout 2011. See EFCH 10-K for fiscal year 2011 (attached as Exhibit M) at 161 (reporting EFCH's book equity as negative $7.82 billion).

38. Notwithstanding *both* their knowledge of the allegations that the Upstream Loans were unfair fraudulent transfers *and* their acknowledgement that TCEH and EFCH were insolvent, the Defendants continued to let TCEH extend the existing Upstream Loans and make new ones for less than reasonably equivalent value. As of December 31, 2012, "[t]he TCEH Demand Notes totaled $698 million." See EFH 10-K for fiscal year 2012 (attached as Exhibit N) at 169.

39. As detailed below, the Defendants' motivation for doing so is clear: The Upstream Loans enriched EFH—a company for whom every Defendant is (or was) an officer or director, and one in which they all have (or had) a personal financial interest.

40. TCEH and EFCH remained insolvent throughout 2012. See Exhibit N at 22 ("TCEH's outstanding debt exceeds its enterprise value"); EFCH 10-K for fiscal year 2012 (attached as Exhibit O) at 156 (reporting EFCH's book equity as negative $10.51 billion). The Board continued to acknowledge that it had been put on notice that the Upstream Loans were

fraudulent transfers. See Exhibit N at 24. And yet the Defendants stood idly by as EFH continued to siphon value from TCEH and EFCH, to the detriment of their creditors.

41.    The Upstream Loans were finally repaid with all interest purportedly due—but *without* the Unpaid Interest—in January 2013.[1]

## III.    DEMAND HERE WOULD HAVE BEEN FUTILE

42.    Plaintiffs bring this action for the benefit of EFCH to redress injuries suffered, and continuing to be suffered, by EFCH and its creditors as a result of the Defendants' actions. EFCH is named as a nominal party in this action.

43.    Plaintiffs have been creditors of TCEH and EFCH since at least January 2011, which is prior to the full accrual of the Unpaid Interest complained of and before the Upstream Loans at issue were either made or re-extended. Plaintiffs will adequately and fairly represent the interests of EFCH in enforcing and prosecuting its rights. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

44.    By virtue of EFCH's insolvency, the Defendants' fiduciary duties run to EFCH's creditors, including Plaintiffs. As alleged in Paragraph 30, EFCH admits that it has been insolvent since at least the fourth quarter of 2010—and, therefore, that the Defendants owed fiduciary duties to EFCH's creditors since *at least* that time. On information and belief, EFCH became insolvent much earlier than the fourth quarter of 2010.

---

[1] On information and belief, EFCH is currently "planning an internal transaction, the ultimate result of which is to convert EFCH from a Texas corporation into a Delaware limited liability corporation." See Exhibit P at 2. Should this transaction be completed, it would constitute a mere restructuring of the company, one that would not in any way affect creditors' interests. "There will be no change of control of . . . EFCH . . . as a result of this internal restructuring." Exhibit P at 2. Moreover, "[f]ollowing the conversion, EFCH will remain a wholly owned subsidiary of EFH, and EFH will retain the same assets, liabilities, owners, board of directors, and management." Exhibit P at 2. Plaintiff will thus remain creditors of EFCH to exactly the same extent and for exactly the same reasons that they are currently.

45.     Defendants' breaches of their fiduciary duties have substantially damaged EFCH. As a consequence, EFCH'S creditors, including Plaintiffs, have standing to assert on a derivative basis causes of action against the Defendants for those breaches.

46.     Plaintiffs have not made demand on the board of EFCH.  Making such a demand would have been futile because every current Board member had an interest in the Upstream Loans that are the subject of this suit.  Five of the six current director-Defendants—Ms. Acosta and Messrs. Lebovitz, MacDougall, Smidt, and Young—sit on the board of the company that *made* the Upstream Loans (TCEH), the company that *guaranteed* those loans (Nominal Defendant EFCH), *and* the company that *received* the loans (EFH).  The sixth current director-Defendant, Mr. Keglevic, sits on the Board of TCEH and EFCH and is the Chief Financial Officer of EFH.  As a matter of law, demand is excused where a majority of directors stand on both sides of the challenged transaction, as is the case here.

47.     Moreover, the Defendants personally profited from the Upstream Loans in a manner not shared by EFCH's creditors because all of them had personal, pecuniary interests in the financial health of EFH that are not shared by EFCH's creditors.

48.     Indeed, *virtually all* of EFH (98.79%) is beneficially owned by its officers and directors, among them the Defendants here.  See Exhibit N at 214.  As a result, they personally benefited from the Upstream Loans and from EFH's failure to repay the Unpaid Interest to TCEH—benefits not shared by EFCH's creditors.

49.     Defendant Acosta is the beneficial owner of 323,529 shares of EFH.  See Exhibit N at 214.

50.     Defendant Keglevic is an officer of EFH.  In that capacity he regularly receives awards of stock in EFH as part of his compensation.  In 2011, he received a stock award valued at $1,782,500.  In 2012, he received a stock award valued at $175,000.  See Exhibit N at 198.

51.     Defendant Lebovitz is a Managing Director of Goldman Sachs, which, through its affiliate GS Capital Partners, owns a controlling percentage of the Texas Holdings Partnership, which, in turn, is the beneficial owner of 1,657,600,000 shares of EFH.  See Exhibit N at 214-215.  Goldman Sachs also receives management fees from EFH, fees that can be paid, in part, by the Unpaid Interest that rightfully belongs to TCEH and EFCH.  See Exhibit N at 168.

52.     Defendant MacDougall is a partner of TPG, which owns a controlling percentage of the Texas Holdings Partnership, which, in turn, is the beneficial owner of 1,657,600,000 shares of EFH.  See Exhibit N at 214-215.  TPG also receives management fees from EFH, fees that can be paid, in part, by the Unpaid Interest that rightfully belongs to TCEH and EFCH.  See Exhibit N at 168.

53.     Defendant Smidt is a member of KKR, which owns a controlling percentage of the Texas Holdings Partnership, which, in turn, is the beneficial owner of 1,657,600,000 shares of EFH.  See Exhibit N at 214-215.  KKR also receives management fees from EFH, fees that can be paid, in part, by the Unpaid Interest that rightfully belongs to TCEH and EFCH.  See Exhibit N at 168.

54.     Defendant Young is the beneficial owner of 1,012,222 shares of EFH.  See Exhibit N at 214.

55.     While he was a director of EFCH, Defendant Goltz was a Managing Director of KKR, which owns a controlling percentage of the Texas Holdings Partnership, which, in turn, is the beneficial owner of 1,657,600,000 shares of EFH.  While he was a director, KKR also

received management fees from EFH, fees that could be paid, in part, by the Unpaid Interest that rightfully belongs to TCEH and EFCH. See Exhibit L at 180.

56.     The Defendants' direct or indirect ownership of shares in EFH makes their interests diametrically opposed to those of EFCH's creditors:   Whereas EFH is stronger for having not paid TCEH the Unpaid Interest, that failure has left TCEH (and EFCH) with fewer funds to pay their creditors, including the Plaintiffs here.   Under these circumstances, demand would have been futile.

## COUNT ONE
### (Breach of Fiduciary Duty)

57.     Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

58.     Because EFCH was insolvent at all relevant times—as early as 2008 and no later than 2010—the Defendants were bound to act in the best interests of EFCH and its creditors.

59.     The Defendants owed fiduciary duties of loyalty to EFCH and its creditors. Those duties included, among other things, a duty to act honestly and in the best interest of EFCH and its creditors, a duty to avoid conflicts between their personal interests and the interests of EFCH and its creditors, and a duty to exercise their power for a proper purpose.   The Defendants breached those duties when they permitted TCEH to make and re-extend daily the Upstream Loans without collecting fair and reasonably equivalent value, including the Unpaid Interest, in return.

60.     The Defendants also failed to act in good faith as was required by the fiduciary duty of loyalty.   Through the actions described herein, the Defendants showed a demonstrated indifference to their duty to protect the interests of EFCH and its creditors, and acted in a manner unrelated to the best interests of EFCH and its creditors.   Their primary loyalty was given to the interests of other affiliated companies, among them EFH.   Moreover, the Upstream Loans

14

described herein were authorized and permitted for some purpose other than a genuine attempt to advance corporate welfare.  Such transactions were authorized with the intent to harm EFCH and its creditors.  The Defendants' breach of their fiduciary duty of loyalty caused loss and damage to EFCH of over $725 million.

61.     Because of EFCH's insolvency, breaches of Defendants' fiduciary duties may be enforced as derivative claims by its creditors, including Plaintiffs.

**WHEREFORE**, Plaintiffs pray for judgment against the Defendants as follows:

(a)     All actual and consequential damages, including the full amount of the Unpaid Interest;

(b)     Pre-judgment and post-judgment interest;

(c)     Attorneys' fees and costs; and

(d)     Such other relief as this Court deems just and proper.

Dated: March 19, 2013              Respectively submitted,

                                   /s/ Jeff P. Prostok
                                   Jeff P. Prostok
                                   State Bar No. 16352500
                                   J. Robert Forshey
                                   State Bar No. 07264200
                                   Suzanne K. Rosen
                                   State Bar No. 00798518
                                   FORSHEY & PROSTOK, LLP
                                   777 Main Street, Suite 1290
                                   Fort Worth, Texas 76102
                                   Telephone:  (817) 877-8855
                                   Facsimile:  (817) 87704151

                                   and

                                   Lawrence S. Robbins
                                   Kathryn S. Zecca
                                   Ariel N. Lavinbuk
                                   ROBBINS, RUSSELL, ENGLERT, ORSECK,
                                   UNTEREINER & SAUBER LLP
                                   1801 K Street, N.W.

Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
lrobbins@robbinsrussell.com

*Attorneys for Plaintiffs*

## VERIFICATION

I, Mark D. Brodsky, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: March _11_, 2013

> **Aurelius Capital Master, Ltd.**
> By: Aurelius Capital Management, LP, solely as investment manager and not in its individual capacity
>
> By: _____
> Name: Mark D. Brodsky
> Title: Chairman
>
> **ACP Master, Ltd.**
> By: Aurelius Capital Management, LP, solely as investment manager and not in its individual capacity.
>
> By: _____
> Name: Mark D. Brodsky
> Title: Chairman