IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AURELIUS CAPITAL MASTER, LTD., And ACP MASTER, LTD. § § § Plaintiffs, § § v. § ARCILIA C. ACOSTA, FREDERICK § M. GOLTZ, PAUL KEGLEVIC, SCOTT § LEBOVITS, MICHAEL MACDOUGALL, § JONATHAN D. SMIDT, and JOHN F. § YOUNG, § § Defendants, § § ENERGY FUTURE COMPETITIVE § HOLDINGS COMPANY, a Texas Corp. § § Nominal Defendant. § § | | 3:13-CV-1173-P |

# ORDER

Now before the Court is Defendants' Motion to Dismiss, filed on June 28, 2013. Doc. 13. Plaintiffs filed a Response on August 16, 2013. Doc. 15. Defendants filed a Reply on September 16, 2013. Doc. 16. After reviewing the parties' briefing, the evidence, and the applicable law, the Court GRANTS Defendant's Motion to Dismiss.

## I.    Background[1]

This is a suit by creditors against the Board of Directors for Energy Future Competitive Holdings Co. ("EFCH"), a guarantor on a large amount of loans. EFCH is not the only corporate entity involved in the case. Its parent company, Energy Future Holdings ("EFH"), and one of its

---

[1] The information in this section is based on the allegations in Plaintiff's First Amended Complaint. *See* Doc. 10.

subsidiaries, Texas Competitive Energy Holdings ("TCEH"), play significant roles in the events leading to this suit. Indeed, their roles are more important to the allegations than EFCH's role. But all of these companies are run by essentially the same group of people; all of the individual defendants are directors and officers for all three companies ("Defendant-Directors").[2]

According to the allegations, TCEH began issuing loans to EFH on the cheap starting in 2007. TCEH secured funding by entering into a credit agreement with several hundred lenders, permitting it to borrow up to $24.5 billion, $16 billion of which was made through a term loan that was set to be due in 2014. At the same time, two promissory notes were executed, one providing that TCEH would lend EFH funds to cover its operating expenses and the other providing for EFH's principal and interest payments on other external debts. The parties later voided the Expenses Note and replaced it with a new note identical to the first, except naming EFCH as the guarantor. The External Debt Note was amended to also name EFCH as the guarantor. The notes were payable on demand by TCEH and set an interest rate of five percentage points above the London Interbank Offered Rate ("LIBOR"). That rate, according to the complaint, was much too low, averaging 5.74% over roughly a five-year period. In contrast to that, similar debt issued by EFH on the open market and over the same time period ranged from 9.53% to 22.39%. Plaintiffs credit the steal to Defendant-Directors giving one of its companies, EFH, a break at the expense of its other companies, EFCH and TCEH, and their creditors.

Now two of those creditors, Aurelius Capital Master, Ltd., and ACP Master, LTD ("Aurelius"), are suing on behalf of TCEH to recover the difference between the interest rate

---

[2] Five are directors for each and act as various officers; a sixth is a director for two of the companies and an officer in the third.

Defendant-Directors set and the interest rate Aurelies believes TCEH should have set ("the Additional Interest").[3] Indeed, that is all it is suing for because, according to the complaint, all of the principal and interest loaned out under the agreements were paid back as of January 2013.

Defendant-Directors now move to dismiss the complaint.

## II.   Motion To Dismiss Standards

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule 12(b)(6) provides for the dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim for which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Id.* ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Twombly*, 550 U.S. at 555)). Additionally, the factual allegations of a complaint must state a plausible claim for relief. *Id.* at 679. A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Id.*; *see also Jacquez v. Procunier*, 801 F.2d 789, 791-92 (5th Cir. 1986).

---

[3] In a bit of clever advocacy, the Plaintiffs call the difference between the paid interest and the interest they want the "Unpaid Interest." The Court rejects this designation. "Unpaid" gives the sense that the interest was actually bargained for and then never transferred. In reality, the interest being sought is beyond what any of the parties initially expected. For clarity, "Additional Interest" is the better term.

The Court's focus in a 12(b)(6) determination is not whether the plaintiff should prevail on the merits but rather whether the plaintiff has failed to state a claim. *Twombly*, 550 U.S. at 563 n.8 (holding "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds) (finding the standard for a 12(b)(6) motion is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims").

### III.  Creditor Suit For Breach Of A Fiduciary Duty

Much of Defendant-Directors' Motion to Dismiss focuses on the conduct of the parties. (Did Defendant-Directors actually breach a fiduciary duty?  Was the interest rate on the agreements ratified?)  But a more basic issue controls the outcome of this case: Under Texas law, when may creditors sue a corporation's directors for breach of a fiduciary duty?  Though federal precedents obfuscate the issue, the answer is that creditors can only bring such suits when the corporation is insolvent and no longer operating.  Since Aurelius, a creditor, has not alleged sufficient factual matter to show that EFCH has ceased operating, the Court dismisses both of Aurelius' claims against EFCH.

#### a. The Issue

Suits for breach of a fiduciary duty come in one of two forms: direct or derivative.  Under the first, a plaintiff sues a defendant for violation of a duty owed to the plaintiff, while under the second, the suit is for violation of a duty owed to the corporation that is being enforced by the plaintiff.  Aurelius insists that this is a derivative action, abandoning any claim that Defendant-Directors owed it a fiduciary duty.  *See* Doc. 10 at 4 ("This is a derivative action to collect from

the current and former directors of EFCH the [Additional Interest] on the Upstream Loans that they failed to cause TCEH to collect from EFH."); *see* Doc. 15 at 22 ("[T]his is a derivative (not a direct) action."). That leaves it the option to derivatively sue Defendant-Directors for breach of a fiduciary duty owed to EFCH.

Derivative suits are typically the province of shareholders. *See* Tex. Bus. Orgs. Code § 21.552 (setting statutory requirements for a shareholder to bring a derivative suit under Texas law); Fed. R. Civ. P. 23.1 (establishing procedural rules for derivative actions that apply to shareholders broadly). But, as the parties agree, creditors may bring derivative suits under limited circumstances. When they may, however, is disputed. Defendant-Directors contend that derivative suits are available to creditors only under the trust fund doctrine, which requires the corporation (1) be insolvent and (2) have ceased operations. The trust fund doctrine is altogether irrelevant in Aurelius' view. It simply permits a <u>direct</u> suit. To support a <u>derivative</u> suit, Aurelius agues, all a creditor must show is that the corporation is insolvent. The difference between the two views is critical because the complaint makes no allegations about EFCH ceasing operations. Whichever interpretation of Texas law prevails resolves the issue of whether Aurelius may bring this derivative suit.

  b. *The Answer*

Review of Texas law indicates that creditors have never been given the right to sue for breach of fiduciary duty[4] outside of the limited exception of the trust fund doctrine.

When applying state law, federal courts are constrained by various sources of precedent. Pronouncements by a state's highest court are binding on federal courts applying that state's law.

---

[4] As discussed below, it is unclear—and unnecessary for this Court to decide—whether the trust fund doctrine permits direct suits or derivative suits. *See infra* note 6.

*See Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. 1980) ("In matters of [state] substantive law, our relation to the [state's highest court] is all but identical to that of a [state] intermediate appellate court."). In the absence of controlling precedent, a federal court should "attempt to predict state law," often referred to as "mak[ing] an Erie guess." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552 (5th Cir. 2002). But they should avoid creating, modifying, or innovating state law. *Id.* Intermediate state appellate court decisions control Erie guesses unless a federal court is "convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (internal citations and quotations omitted). Federal district court interpretations of state law are not binding "in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 131 S. Ct. 2020, 2033 n. 7 (2011) (citation and internal quotations omitted).

Neither the parties nor the Court could locate Texas Supreme Court precedent that squarely addresses whether creditors can bring a derivative suit upon mere insolvency. That silence cuts against Aurelius' position. Traditional derivative suits against directors for breach of fiduciary duties have been shareholders' prerogatives since their inception at common law. *See Evans v. Brandon*, 53 Tex. 56, 60 (1880) ("If the corporation refuses to sue, or is still under the control of the directors sought to be held responsible, a stockholder may maintain an equitable proceeding to protect the interest of the corporation as the trustee for all its stockholders and creditors.") (citations and internal quotations omitted). The Texas legislature has long since codified and altered the requirements for derivative suits, currently set out in the Texas Business Organization Code. In the subchapter covering the general topic of "Derivative Proceedings," the Code identifies derivative suits only with shareholders. Noticeably absent is any mention of

providing creditors the option to sue derivatively. *See* Tex. Bus. Org. Code § 21.551 et seq. The implication is this: the Texas legislature has actively chosen to recognize that shareholders can bring derivative suits, but has not expanded them to creditors. Of course, if Aurelius could point to common law precedents granting creditors rights to bring derivative suits upon insolvency, the issue would be a lot closer. The Court would have to determine if the Texas legislature had chosen to abrogate the common law of creditor derivative suits by implication. But that argument does not matter because precedent does not bear out that creditors can sue derivatively.

And the clearest statement from a Texas appellate court confirms this reading. In *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624 (Tex. Civ. App. 1973), the Texas court stated that breaches of fiduciary duties "neither create a cause of action in a creditor of the corporation for the wrong done the [sic] corporation nor, without more, entitle the creditor to collect his claim from the officers and directors." *Id.* at 628; *see also Prostok v. Browning*, 112 S.W.3d 876, 908 n.41 (Tex. App. 2003) (doubting that the trust fund doctrine "exists outside of the dissolution of a corporation"), *aff'd in part, rev'd in part*, 165 S.W.3d 336 (Tex. 2005). Because Aurelius has not provided "other persuasive data" to explain why the Texas Supreme Court would not follow this approach, the Court defers to that reading. *Mem'l Hermann Healthcare Sys. Inc.*, 524 F.3d at 678.

The trust fund doctrine—which Aurelius makes absolutely clear does not apply in this case, *see* Doc. 15 at 24 (employing a heading that reads "The Trust Fund Doctrine Is Irrelevant Because This Is Not A Trust Fund Action")—is the closest that Texas law has come to recognizing a right for creditors to sue derivatively. The Texas Supreme Court recognized it as early as 1893:

[T]he assets of <u>an insolvent corporation</u>, <u>which has ceased to carry on business</u>,

> and <u>does not intend to resume</u>, is a fund from which all creditors not secured by valid liens existing before the condition was fixed have the right to be paid on terms of perfect equality. If such a fund be a trust fund, then the assets of a corporation so circumstanced are trust funds, and those whose right and duty it is to administer such a fund are trustees.

*Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co.*, 86 Tex. 143, 158, 24 S.W. 16, 21 (1893). Later intermediate courts have recognized that this doctrine is the rare exception that permits creditors to sue directors for breach. *Fagan.*, 494 S.W.2d at 628 ("There is a well recognized exception to that basic rule [that creditors may not sue for breach of fiduciary duties]… frequently called the trust fund doctrine."). And the doctrine retains the same basic requirements as it did at inception: insolvency and cessation of operation. *Id.* ("Such exception, stated in general terms, is to the effect that when a corporation (1) becomes insolvent and (2) ceases doing business, then the assets of the corporation become a trust fund for the benefit, primarily, of its creditors."). No Texas cases indicate that the trust fund doctrine has expanded to apply when a corporation is insolvent, but still operating.

Aurelius clings to scraps of federal precedents, insisting that creditors can sue derivatively once a corporation is insolvent, even if it is still operating. But a close look at the cases shows Aurelius misreads some and should not have relied on the others.

The cases Aurelius misreads are two bankruptcy court opinions from the Southern District of Texas, *In re Ritz*, 459 B.R. 623 (Bank. S.D. Tex. 2011) and *In re Rajabali*, 365 B.R. 702 (Bankr. S.D. Tex. 2007). They purport to rely on *Fagan* for the proposition that "when a corporation is insolvent, the creditors may bring such a suit to hold the directors liable for a

breach of their fiduciary duties." *Id.* at 708.[5] Surely, Aurelius argues, such a plain statement of the law shows creditors can bring a derivative suit aside from the trust fund doctrine. But context matters. Both *In re Ritz* and *In re Rajabali* were Chapter 7 bankruptcy cases, meaning the corporations were liquidating and ceasing business operations. The prong omitted from those courts' statements of the trust fund doctrine, cessation of operations, was irrelevant because, by virtue of the proceeding, the corporations met the requirement. That the opinions rely on *Fagan*—featuring its unequivocal statement on creditor suits—confirms that they were not reading Texas law to permit creditors to sue upon mere insolvency. Indeed, the only reason the trust fund doctrine came up was to resolve an ambiguity in Texas law that matters only <u>after</u> the trust fund doctrine applies.[6] So any loose language about creditor derivative suits apart from the trust fund doctrine would be irrelevant to the issue before that Court. That means that Aurelius has, at the very best, found dicta from a non-binding federal court opinion that conflicts with Texas precedent. More likely, though, is that Aurelius has just misread those cases.

The other federal sources Aurelius relies on have mistaken Delaware law for Texas law. *See In re TOCFHBI, Inc.*, 413 B.R. 523, 539 (Bankr. N.D. Tex. 2009) (relying almost exclusively on Delaware law); *In re Vartec Telecom*, No. 04-81694, 2007 WL 2872283, at *3 (Bankr. N.D. Tex. 2007) (relying on and interpreting Delaware law for the proposition that "the

---

[5] *In re Ritz* relied on *In re Rajabali* for that proposition so they share precedential lineage. *See In re Ritz*, 459 B.R. at 633-35.

[6] The ambiguity is whether the trust fund doctrine creates a fiduciary duty to the creditors or enables them to sue derivatively. *Compare Smith v. Chapman*, 897 S.W.2d 399, 402 (Tex. App. 1995) ("The trust fund theory places directors in a fiduciary relationship to creditors.") with *Prostok*, 112 S.W.3d at 908 n.1 ("[T]he doctrine does not create a fiduciary duty between officers and directors and creditors of the corporation."). The issue mattered in the bankruptcy cases because the courts were applying 11 U.S.C. § 523(a)(4), which excepts from discharge in bankruptcy any debts incurred due to "fraud or defalcation <u>while acting in a fiduciary capacity</u>." If the trust fund doctrine created a direct fiduciary duty, creditors could recover under § 523(a)(4). If it created a right to sue derivatively, then the creditors were not owed a fiduciary duty and § 523(a)(4) was inapplicable.
   In this case, the ambiguity does not matter because the trust fund doctrine does not apply at all. Thus, the issue of what kind of action it permits is not before the Court.

creditors of an insolvent corporation have standing to maintain derivative claims against debtors on behalf of the corporation for breaches of fiduciary duties"); *In re I.G. Services, Ltd.*, No. 99-53170, 2007 WL 2229650, *2-5 (Bankr. W.D. Tex. July 31, 2007) (relying on Delaware law to resolve whether creditors can bring direct or derivative actions upon insolvency). While Delaware's corporate law is certainly influential, the decision to alter Texas law remains with Texas courts. These cases cannot support Aurelius' claim.

## IV.     Conclusion and Order

Because Texas law does not permit creditors to sue for breach of a fiduciary duty outside of the trust fund doctrine, all of Aurelius' claims are dismissed without prejudice. Plaintiffs are granted leave to amend their complaint. Any amendment must be filed within 21 days of the date of this Order.

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

Signed this 28th day of January, 2014.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE